RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2003 FED App. 0145P (6th Cir.)
File Name:  03a0145p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*

No. 00-6140

ROBERT DOUGLAS
TREADWAY,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Jackson.
No. 00-10005—James D. Todd, Chief District Judge.

Argued:  March 12, 2003

Decided and Filed:  May 16, 2003

Before:  MOORE and CLAY, Circuit Judges; LAWSON,
District Judge.[*]

---

[*] The Honorable David M. Lawson, United States District Judge for
the Eastern District of Michigan, sitting by designation.

---

**COUNSEL**

**ARGUED:**  Michael M. Losavio, Louisville, Kentucky, for
Appellant.    Paul M. O'Brien, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.
**ON BRIEF:**  Michael M. Losavio, Louisville, Kentucky, for
Appellant.    Paul M. O'Brien, ASSISTANT UNITED
STATES ATTORNEY, Memphis, Tennessee, for Appellee.
Robert Douglas Treadway, Yazoo City, Mississippi, pro se.

---

**OPINION**

---

KAREN NELSON MOORE, Circuit Judge.  Defendant-
Appellant Robert D. Treadway ("Treadway") appeals his
conviction and sentence for conspiracy and possession with
intent to distribute methamphetamine, amphetamine, and
marijuana and for possession by a felon of a firearm and
ammunition.  Treadway pleaded guilty to each charge in
which he was named in the superseding indictment.  On
appeal, Treadway raises two arguments.  He first argues that
his sentence should be vacated and that he should be
resentenced because the district court relied on the
Presentence Investigative Report's ("PSR") allegedly
erroneous statement that he stipulated to the drug amounts
contained therein and never made specific findings regarding
drug quantity.  Second, he contends that his sentence and
guilty plea should be set aside because his Sixth Amendment
right to counsel and Fifth Amendment right to due process
were violated when his chosen attorney was permitted to
withdraw from representation without a hearing at which
Treadway was present.

In response to Treadway's first argument on appeal, we
conclude that the district court did not plainly err when it
relied on the undisputed drug quantity contained in the PSR.
Reviewing his second argument, we determine that the district

court committed error that was plain by failing to provide Treadway an opportunity to be heard before allowing his chosen counsel to withdraw. Nevertheless, we uphold Treadway's conviction and sentence because his substantial rights were not affected and the district court's omission did not affect the fairness, integrity, or public reputation of the proceeding. Accordingly, we **AFFIRM** Treadway's conviction and sentence.

## I. BACKGROUND

One of Treadway's co-defendants, Richard Pinkley ("Pinkley"), ran a large-scale drug operation. Pinkley imported substantial supplies of marijuana, amphetamine, and methamphetamine from California and Texas via commercial airlines or hidden compartments in vehicles and distributed the drugs in smaller quantities. Treadway obtained ounce quantities of methamphetamine and pound quantities of marijuana from Pinkley and distributed them in West Tennessee.

Federal agents began an investigation of Treadway and devised a plan to use Cooperating Individuals ("CI") to make several purchases from him of the various drugs. First, on September 18, 1997, a CI purchased nearly five pounds of marijuana from Treadway. Again, on October 28, 1997, a CI obtained three pounds of marijuana. On February 26, 1998, another CI was used to purchase .7 grams of a substance purporting to be methamphetamine but which actually tested positive for amphetamine. Two other similar purchases were made, one of 4.8 grams and one of 12.8 grams, both of which again tested positive for amphetamine. CIs made two further purchases; one purchase totaled 10.4 grams of methamphetamine, and the other consisted of 28.5 grams of a substance purporting to be methamphetamine but it actually was amphetamine.

On December 17, 1999, agents served Treadway with an arrest warrant at his home. After receipt of the arrest warrant, Treadway permitted the agents to search the premises. The agents recovered 249.5 grams of marijuana, .22-caliber

ammunition, and Winchester 12-gauge shotgun shells. When asked about the firearms' whereabouts, Treadway told the agents that the firearms recently were stolen from his residence. Records in the Sheriff's Department confirmed that Treadway had reported stolen firearms four months earlier.

On February 14, 2000, a grand jury returned a twenty-count superseding indictment in which Treadway was named in twelve counts. The first two counts charged Treadway with violations of 21 U.S.C. § 846: Count One charged him with conspiracy to possess with intent to distribute and to distribute in excess of 25 pounds of methamphetamine and Count Two charged him with conspiracy to possess with intent to distribute and to distribute in excess of 500 pounds of marijuana. Counts Four and Five charged him with offenses related to the distribution of specified amounts of marijuana, Counts Nine, Ten, Eleven, and Fourteen charged him with offenses related to the distribution of specified amounts of amphetamine, Count Fifteen charged him with possession with intent to distribute a specified amount of marijuana, and Count Thirteen charged him with a methamphetamine distribution-related offense, all in violation of 21 U.S.C. § 841(a)(1). Finally, Counts Sixteen and Seventeen charged him with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g).

Treadway retained an attorney, Charles Agee ("Agee"), to represent him. Shortly thereafter, the government raised a potential conflict of interest regarding Agee. Specifically, one of Agee's former clients would be called to testify against Treadway, if Treadway's case proceeded to trial. Agee decided to withdraw, and on March 10, 2000, the district judge entered an order permitting such withdrawal. That same day, Treadway retained James F. Schaeffer, Sr. and he was substituted in Agee's stead. James F. Schaeffer, Jr. ("Schaeffer") soon assumed the role as counsel for Treadway, represented Treadway at his guilty plea hearing, and remained Treadway's attorney through the conclusion of the sentencing phase of the proceedings.

On June 23, 2000, a probation officer prepared a PSR. In the offense-level-computations section of the PSR, the probation officer stated:

> [T]he plea agreement stipulates the amounts of the controlled substances are at least five-hundred (500) grams, but not more than 1.5 kilograms of methamphetamine, and four-hundred (400) pounds of marijuana . . . . [Treadway] also pleaded guilty to Counts nine, ten, eleven and fourteen which, according to the indictment, involved .7, 4.8, 12.5 and 28.5 grams of amphetamine.

Joint Appendix ("J.A.") at 146 (PSR). The PSR calculated Treadway's base offense level at 32 and then reduced the total offense level to 29 after a three-level reduction for acceptance of responsibility. Based on his criminal history category of IV, his recommended sentence range was between 121 and 151 months. At sentencing, the government moved for a downward departure pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 5K1.1 for Treadway's cooperation. The district court granted the motion, departed downward three levels, and lowered Treadway's sentence range to 92-115 months. Treadway was ultimately sentenced to 100 months of imprisonment and five years of supervised release. Final judgment was entered on August 9, 2000, and Treadway timely filed a pro se notice of appeal.[1]

Treadway's appeal raises two issues. First, Treadway argues that the PSR erroneously states that the plea agreement stipulated to the quantity of drugs contained therein and that the district court improperly relied on this misleading statement in sentencing. Treadway asserts that he never stipulated to the drug amount in the plea agreement and that the agreement specifically preserved his right "to argue any mitigating factors" and "to propose any alternatives to

---

[1]Treadway first filed a pro se brief with this court and then his appointed counsel filed a brief on September 9, 2002, both of which currently are before this court.

incarceration available under the Sentencing Guidelines." J.A. at 58 (Plea Agreement).[2] He also argues that the district court improperly held him responsible for the entire amount of drugs involved in Pinkley's conspiracy because the court never made particularized findings as to the quantity of drugs individually attributable to him. Thus, Treadway argues that his sentence was too high and that his base offense level should have been calculated at 16. Second, he asserts that his Sixth Amendment right to counsel was violated when the court permitted Agee to withdraw from representation. Treadway's primary objection is a due process claim that a hearing should have been held on Agee's withdrawal where Treadway would have been entitled to voice his objections to the removal of his chosen attorney.

## II. ANALYSIS

### A. Standard of Review

This court reviews a sentencing court's determination of drug quantity for clear error. *See United States v. Hough*, 276 F.3d 884, 891 (6th Cir.), *cert. denied*, 535 U.S. 1089 *and* -- U.S. --, 123 S. Ct. 199 (2002). However, because Treadway never objected at sentencing to the drug quantity calculations in the PSR that he now challenges on appeal, we review Treadway's claim for plain error only. *See United States v.*

---

[2]The plea agreement, signed by the Assistant United States Attorney, Treadway's attorney, and Treadway himself, lists the counts to which Treadway pleaded guilty. The relevant language of the plea agreement reads as follows:

> The government agrees to recommend that the defendant's base offense level pursuant to § 2D1.1 of the sentencing guidelines be calculated using the following drug quantities: (1) at least 500 grams but less than 1.5 kilograms of methamphetamine, and (2) 400 pounds of marijuana.
> . . .
> The Defendant further understands that his attorney will be free to argue any mitigating factors in his behalf and will be free to propose any alternatives to incarceration available under the Sentencing Guidelines.

J.A. at 57-58 (Plea Agreement).

*Slone*, 833 F.2d 595, 598 (6th Cir. 1987); *see also* Fed. R. Crim. P. 52(b) (stating that challenges affecting a defendant's substantial rights can be reviewed for plain error even when not previously raised); *United States v. Carr*, 170 F.3d 572, 577 (6th Cir.) (noting that although failure to object at sentencing ordinarily would bar appellate review, plain error review still might be appropriate), *cert. denied*, 527 U.S. 1028 (1999). In his objections to the PSR, Treadway stated that his "adjusted" offense level should have been set at 25 or less because he provided substantial assistance to the government and deserved a reduction for his cooperation. J.A. at 64 (Objections to PSR). He never specifically objected to the drug quantity contained in the PSR or to the PSR's indication that he stipulated to the drug quantity in the plea agreement.

We also review Treadway's Sixth and Fifth Amendment challenges for plain error. Treadway raised for the first time on appeal his objection to the district court's acceptance of Agee's withdrawal from representation and that court's failure to hold a hearing at which Treadway was present. The government argues that Treadway has waived this issue by failing to object below. *See United States v. Hall*, 200 F.3d 962, 964 (6th Cir. 2000) ("Constitutional objections that appear for the first time on appeal are conclusively deemed to be waived, with the effect that [the appellate court is] deprived of jurisdiction." (alteration in original) (quotations omitted)). Nonetheless, we still are permitted to review an issue not raised below if we determine that there was a plain error that affected the trial's "fundamental fairness, honesty or public reputation." *United States v. Saenz*, 915 F.2d 1046, 1047 (6th Cir. 1990) (quotation omitted). However, we review Treadway's challenge only for plain error because he neglected to object below to the withdrawal of his chosen counsel and to the district court's failure to provide a hearing on the matter, although he had ample opportunity to do so. *See United States v. Olano*, 507 U.S. 725, 731-32 (1993).

In order to succeed under the plain error standard of review, Treadway must show that: (1) an error occurred in the district court, (2) that was plain, (3) which affected substantial rights,

(4) and seriously interfered with the fairness, integrity, or public reputation of the judicial proceedings. *United States v. Vincent*, 20 F.3d 229, 234 (6th Cir. 1994). Thus, before a court of appeals can correct a district court's plain error, we must observe not only a readily apparent error but also determine that such error was prejudicial and resulted in a miscarriage of justice. *See Olano*, 507 U.S. at 735-36.

## B. Treadway's Sentence

Treadway contests both the PSR's remark that he stipulated to the drug quantities contained in the plea agreement and the district court's reliance on this alleged inaccuracy in the PSR. In the instant case, Treadway pleaded guilty to conspiracy charges involving 25 pounds of methamphetamine and 500 pounds of marijuana. He also pleaded guilty to numerous possession with intent to distribute and distribution charges involving marijuana, amphetamine, and methamphetamine. The plea agreement that he signed stated: "The government agrees to recommend that the defendant's base offense level pursuant to § 2D1.1 of the sentencing guidelines be calculated using the following drug quantities: (1) at least 500 grams but less than 1.5 kilograms of methamphetamine, and (2) 400 pounds of marijuana." J.A. at 57 (Plea Agreement). At the plea hearing, the district court requested that the government disclose the evidence that would have been presented had Treadway's case gone to trial. The government indicated that the evidence would show that Treadway purchased quantities of methamphetamine and marijuana from Pinkley over the course of the conspiracy for further distribution and that CIs made numerous purchases from Treadway during the course of the investigation. In addition, Treadway admitted in his plea hearing, not only to the drugs he sold to the CIs, but also to receiving quantities of methamphetamine and marijuana from Pinkley for the length of the conspiracy. Upon hearing the evidence and Treadway's admission, the district court stated, "that's a sufficient factual basis . . . to support convictions on the counts to which you're pleading guilty." J.A. at 102 (Plea Hr'g). The PSR noted the drug quantity

stipulation from the plea agreement and based its offense level computations on those quantities.

The presentence investigator was mistaken in concluding that Treadway stipulated in the plea agreement to the drug quantity, but that misstatement does not undermine the trial judge's conclusion regarding the amount of controlled substances for which Treadway should be held accountable for sentencing purposes. The government's agreement to recommend that Treadway be accountable for 500 grams to 1.1 kilograms of methamphetamine and 400 pounds of marijuana, when compared to the drug quantities alleged in the indictment, represented a concession by the government which favored Treadway. That recommendation was accepted by the presentence investigator and, in turn, the court. The plea agreement did not bind Treadway to the stated drug quantities; he could have offered evidence that he should be accountable for a smaller amount. However, Treadway neither objected to the drug quantities reported in the PSR nor took issue with the sentencing court's determination of drug quantities at the sentencing hearing.

Even if the sentencing court perceived Treadway's plea agreement as a stipulation to drug quantities, the sentencing court was not bound to accept it. *United States v. Kemper*, 908 F.2d 33, 37 (6th Cir. 1990) (noting that pursuant to § 6B1.4 of the Sentencing Guidelines a court is not bound by a stipulation of facts accompanying a plea agreement but rather must "determine the facts relevant to sentencing" with the aid of the PSR). At sentencing, the government bears the burden of proving the amount of drugs by a preponderance of the evidence. *United States v. Clemons*, 999 F.2d 154, 156 (6th Cir. 1993), *cert. denied*, 510 U.S. 1050 (1994). "The district court may rely on any competent evidence in the record; however, the district court's findings must have some minimum indicium of reliability beyond mere allegation." *Hough*, 276 F.3d at 891 (quotation omitted). Where exact drug quantity cannot be established, a district court may make a reasonable quantity estimate if that estimate is supported by the preponderance of the evidence. *Clemons*, 999 F.2d at

156. However, "when choosing between a number of plausible estimates of drug quantity, none of which is more likely than not the correct quantity, a court must err on the side of caution." *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir.), *cert. denied*, 498 U.S. 906 *and* 498 U.S. 989 *and* 498 U.S. 990 (1990).

Thus, we must determine whether a district judge must make independent findings of drug quantity when sentencing a criminal defendant who pleaded guilty or whether the district judge may rely exclusively on the PSR for sentencing if the PSR contains a quantity analysis and the defendant does not object to the quantity determinations therein. At the time the district court sentenced Treadway, Rule 32(c)(1) of the Federal Rules of Criminal Procedure provided, in relevant part:

> At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any *unresolved objections* to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. *For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary* because the *controverted matter* will not be taken into account in, or will not affect, sentencing.

Fed. R. Crim. P. 32(c)(1) (2000) (emphasis added).[3] Because this rule is designed "to ensure that sentencing is based on reliable facts found by the court itself after deliberation, a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence." *United States v. Tarwater*, 308 F.3d 494, 518 (6th Cir. 2002); *see also United States v. Parrott*, 148 F.3d 629, 633 (6th Cir. 1998) (holding that a district court cannot adopt "the factual findings of the presentence report without making factual determinations of its own" when the facts are in dispute (quotation omitted)). Moreover, this court requires "literal compliance" with Rule 32(c)(1) for a variety of reasons, such as enhancing the accuracy of the sentence and the clarity of

---

[3]The December 1, 2002 amendments to the Federal Rules of Criminal Procedure replaced Rule 32(c)(1) with Rule 32(i)(3). Rule 32(i)(3) states:

At sentencing, the court:

(A) may accept any *undisputed* portion of the presentence report as a finding of fact;

(B) must — for any *disputed* portion of the presentence report or other *controverted* matter — rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.

Fed. R. Crim. P. 32(i)(3) (2003) (emphasis added). This new rule attempts to address confusion in the courts over whether, under the prior rule, they were required to make rulings on every objection to the presentence report or only those that potentially would affect the sentence. Fed. R. Crim. P. 32(i)(3) advisory committee's notes. The new rule's clarity is designed to "narrow[] the requirement for court findings to those instances when the objection addresses a controverted matter." *Id.* (quotation omitted). Under the new rule, the district court is entitled to make findings of fact from undisputed statements in the PSR.

Because we are evaluating the district judge's failure to make specific factual findings at Treadway's sentencing hearing on August 8, 2000, we are applying the rule in effect at that time — Rule 32(c)(1). In this opinion, we will refer to Rule 32(c)(1) in the present tense, although we recognize that Rule 32(c)(1) has been superseded by Rule 32(i)(3) effective December 1, 2002, including for pending cases "insofar as is just and practicable." S. Ct. Order of April 29, 2002. We would reach the same result in this case under the new rule.

the record. *Parrott*, 148 F.3d at 633. Similarly, U.S.S.G. § 6A1.3 provides that "[w]hen any factor important to the sentencing determination is reasonably *in dispute*, the parties shall be given an adequate opportunity to present information to the court regarding that factor . . . . The court shall resolve disputed sentencing factors at a sentencing hearing in accordance with Rule 32(c)(1)." U.S.S.G. § 6A1.3 (2000) (emphasis added).

Notably, both Rule 32(c)(1) and § 6A1.3 of the Sentencing Guidelines indicate that reliance on the PSR is insufficient when the facts are in dispute. In the instant case, the district court relied exclusively and entirely on the PSR in sentencing Treadway, but factual issues were not disputed. Treadway never objected, orally or in writing, to the drug quantity calculations contained in the PSR. We can find no reason to require a district court to make independent findings outside the PSR when the facts are undisputed. When the drug quantities provided to the court by the PSR are not challenged and when the PSR utilizes the drug amounts contained in the plea agreement, we have every reason to believe that those quantities provided a reliable basis for determining Treadway's sentence. *See Tarwater*, 308 F.3d at 518; *see also* U.S.S.G. § 6B1.4(d) ("The court is not bound by the [plea agreement's] stipulation, but may with the aid of the presentence report, determine the facts relevant to sentencing."). Thus, the district court did not commit error that was plain in relying on the PSR.[4] Accordingly, we hold that a district court may properly rely exclusively on the PSR for drug quantity when the drug quantity contained therein is not in dispute.

---

[4]Moreover, Treadway never objected to the plea agreement's drug quantities, and therefore, he has failed to show how his sentence is a manifest injustice, which would be necessary to prevail under plain error review.

## C. Sixth Amendment Right to Counsel

Treadway's second claim implicates his Sixth Amendment right under the United States Constitution, which provides that: "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court has interpreted the right to assistance of counsel to include the right to have counsel of one's choosing. *See Chandler v. Fretag*, 348 U.S. 3, 10 (1954) ("[A] defendant must be given a reasonable opportunity to employ and consult with counsel."); *Powell v. Alabama*, 287 U.S. 45, 53 (1932) (stating that a criminal defendant deserves an opportunity to choose his own counsel). Although Sixth Amendment law is often concerned with issues impacting indigent criminal defendants, the amendment applies equally to financially-capable defendants. *Wilson v. Mintzes*, 761 F.2d 275, 280 (6th Cir. 1985) ("[I]t is clear that when an accused is financially able to retain an attorney, the choice of counsel to assist him rests ultimately in his hands and not in the hands of the State."). With respect to the rationale behind such a right, we previously have stated:

> The right to choose one's own counsel is an essential component of the Sixth Amendment because, were a defendant not provided the opportunity to select his own counsel at his own expense, substantial risk would arise that the basic trust between counsel and client, which is a cornerstone of the adversary system, would be undercut.

*Linton v. Perini*, 656 F.2d 207, 209 (6th Cir. 1981), *cert. denied*, 454 U.S. 1162 (1982). Thus, the Sixth Amendment prohibits a court from unreasonably denying a defendant his counsel of choice. *See Wilson*, 761 F.2d at 278-79; *id.* at 280 (explaining that the right to choose one's own counsel is not an absolute right because it is tempered by considerations of "prompt and efficient administration of justice"). The Supreme Court has stated that the Sixth Amendment right to counsel includes the right to have counsel who is not

simultaneously representing parties with conflicting interests. *See Glasser v. United States*, 315 U.S. 60, 70 (1942). Thus, the Court has held that even though there exists a presumption in favor of a defendant's chosen counsel, "that presumption may be overcome not only by a demonstration of actual conflict but by a showing of a serious potential for conflict. The evaluation of the facts and circumstances of each case under this standard must be left primarily to the informed judgment of the trial court." *Wheat v. United States*, 486 U.S. 153, 164 (1988). While the Sixth Amendment affords the right to counsel of one's choosing, "the essential aim of the Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159.

Treadway relies on *Linton* and *Wilson* in support of his Sixth Amendment claim that permitting the withdrawal of his chosen attorney was error. However, Treadway fails to acknowledge the significant differences between his situation and those presented in the cited cases. In those cases, the district court unreasonably and arbitrarily denied the defendants' right to counsel of their own choosing. *See Wilson*, 761 F.2d at 281-82 (holding that the district court acted unreasonably in failing to honor the defendant's request for a new attorney); *Linton*, 656 F.2d at 212 (holding that the trial court acted unreasonably and arbitrarily in failing to allow defendant's chosen counsel time to prepare the case, resulting in such counsel's withdrawal). In Treadway's case, the district court did not act unreasonably, but rather acted appropriately in allowing the withdrawal of Agee due to the potential for a conflict of interest in defending Treadway. If the case had proceeded to trial, Agee would have been unable to effectively cross-examine one of the government's key witnesses against Treadway due to his prior representation of the witness in an unrelated case. *See generally Wheat*, 486 U.S. at 164.

Treadway also objects on the ground that he was denied due process when the district court failed to hold a hearing with

Treadway present regarding Agee's withdrawal.  The Due Process Clause of the Fifth Amendment states that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law."  U.S. Const. amend. V.  The Supreme Court has identified notice and an opportunity to be heard as the hallmarks of procedural due process.  *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950).  Treadway cites no authority, nor can we find any, for his proposition that a hearing is required whenever an attorney seeks to withdraw from representation.  Nevertheless, we do believe that, in the ordinary course, a criminal defendant should have notice and an opportunity to be heard when his attorney of choice seeks to withdraw from representation. *Cf. Anders v. California*, 386 U.S. 738, 744 (1967) (requiring an attorney, attempting to withdraw because an appeal is frivolous, to seek permission to withdraw from the court and to file a brief directing the court to anything in the record that might support the appeal); *United States v. Pankey*, 879 F.2d 864, 1989 WL 78939, *6 (6th Cir. July 18, 1989) (unpublished opinion) (noting that *Anders* requires that "[t]he defendant must be notified and given the opportunity 'to raise any points that he chooses'" (quoting *Anders*, 386 U.S. at 744.)).  However, an oral hearing is not the only way to ensure that defendants receive notice and an opportunity to be heard.  For example, counsel could serve the defendant with a motion of withdrawal and allow him an opportunity to file a response.

Because there is more than one way to afford a defendant due process when his attorney seeks withdrawal, the Western District of Tennessee's local rule pertaining to the procedure for an attorney's withdrawal becomes extremely relevant.  The local rule provides, in pertinent part:

> No attorney of record may withdraw in any case except on written motion and court order.  All motions for leave to withdraw shall include the reasons requiring withdrawal and the name and address of any substitute counsel.  If the name of substitute counsel is not known, the motion shall set forth the name, address and

> telephone number of the client, as well as the signature of the client approving the withdrawal or a certificate of service on the client.

W.D. Tenn. L.R. 83.1(h).  In this case, a review of the docket and record reveals that Agee never filed a motion requesting withdrawal as required under Local Rule 83.1(h).  While it is true that the district judge issued a consent order permitting Agee's withdrawal, it is also true that the local rule requires *both* a written motion *and* a court order; and the rule does not provide for any exceptions.

We hold that the failure to provide Treadway an opportunity to be heard on Agee's withdrawal was error and that it was plain.[5]  *See Vincent*, 20 F.3d at 234; *cf. Guenther v. Commissioner*, 889 F.2d 882, 884 (9th Cir. 1989) (noting that an ex parte communication violates a party's right to due process if the party was denied the "opportunity to participate in determination of the relevant issues" and thereby suffered prejudice).  We also hold that the district court erred when it failed to follow the local rule requiring a written motion.  Although the rule does not specifically refer to due process, compliance with the rule, at the very least, appears to protect a defendant from prejudice by requiring either the substitute attorney's name in or the defendant's signature on the written motion.  W.D. Tenn. L.R. 83.1(h).

Nonetheless, we must affirm the district court because Treadway did not suffer prejudice in that he retained a replacement attorney that same day.  *See Olano*, 507 U.S. at 735-36 (noting that before a court of appeals can correct a district court's plain error it must find prejudicial error).

---

[5] There is evidence in the record suggesting that Treadway had notice of Agee's potential withdrawal.  At an appearance before a magistrate judge, Agee was confronted by the government with his potential conflict of interest, to which he replied: "[I] don't know whether I would have a conflict or not . . . but if I fall under that I will withdraw from the representation.  I've explained that to Mr. Treadway."  J.A. at 128-29 (Tr. of Appearance).  Treadway also was present at that proceeding.

Although Treadway has shown that the district court committed an error that was plain by permitting Agee's withdrawal without a written motion and by neglecting to provide Treadway with an opportunity to be heard before allowing his chosen attorney to withdraw, he has failed to show how this error has affected his substantial rights or how it seriously interfered with the fairness, integrity, or public reputation of the judicial proceedings. Admittedly, if a hearing had been conducted to determine whether Agee had a potential conflict of interest and Treadway had been present, Treadway might have been able to waive any future claims of conflict of interest arising from the representation. In such a situation, however, the Supreme Court has stated that the right to waiver is not absolute. *See Wheat*, 486 U.S. at 162 ("When a trial court finds an actual conflict of interest which impairs the ability of a criminal defendant's chosen counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant." (quotation omitted)). The Court stated in *Wheat*, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Id.* at 160. The *Wheat* Court continued, noting that the presumption in favor of chosen counsel is trumped "not only by a demonstration of actual conflict but by a showing of a serious potential for conflict." *Id.* at164.

Moreover, Treadway never raised an objection, of any kind, in the district court. He never objected to the removal of Agee, never objected to the substitution of Schaeffer for Agee, and has not given any indication that Schaeffer was unsatisfactory. When asked at his plea hearing if his counsel effectively represented him, Treadway conceded that Schaeffer's representation was satisfactory. J.A. at 83-84 (Plea Hr'g). Because Treadway has not revealed any facts that would suggest that the removal of Agee and Treadway's subsequent representation by another retained attorney affected his substantial rights or the "fundamental fairness, honesty, or public reputation" of his judicial proceeding, we

conclude that Treadway failed to satisfy the final two components of the plain-error test. *Vincent*, 20 F.3d at 234. When an error which is plain does not affect substantial rights or seriously interfere with the fairness, integrity, or public reputation of the judicial proceeding, we are unable to conclude that the plain-error test has been satisfied.

### III. CONCLUSION

We hold that the district court did not plainly err by relying on the drug quantities contained in the PSR when those quantities were undisputed. In addition, although the court committed error that was plain when it failed to provide Treadway an opportunity to be heard before removing Treadway's chosen counsel, Treadway's immediate retention of another attorney and Treadway's lack of objection show that this error neither affected his substantial rights nor the fundamental fairness of the proceeding. Accordingly, we **AFFIRM** Treadway's conviction and sentence.