NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0537n.06

No. 22-6050

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Dec 27, 2023<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF TENNESSEE |
| | ) | |
| DUANE RUGGLES | ) | |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: SILER, NALBANDIAN, and DAVIS, Circuit Judges.

SILER, Circuit Judge. Duane Ruggles was convicted of conspiracy to possess with the intent to distribute methamphetamine. In this appeal, Ruggles raises two questions: whether there was enough evidence to convict him and whether the district court properly held him responsible for distributing actual methamphetamine rather than a mixture. We answer both questions affirmatively for the reasons set forth below.[1]

**I.**

*Ruggles's Trial*

In 2019, a federal grand jury indicted Ruggles and five others with conspiracy to possess with the intent to distribute more than fifty grams of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 846. Ruggles's trial began in 2022.

Four investigators—a DEA telecommunications specialist, a task force officer, and two FBI agents—testified about their investigation into the conspiracy. In 2018, the FBI obtained a

---

[1] We have determined that oral argument is unnecessary. See I.O.P. 34(a)(4).

Title III wiretap for a phone used by William Cannon, a suspected methamphetamine supplier around Hardin County, Tennessee. While monitoring Cannon's calls and messages, agents noticed that one number repeatedly contacted Cannon's phone to discuss methamphetamine prices and distribution logistics. Agents surveilled Cannon's apartment during a meeting that Cannon arranged with the caller. At their specified meeting time, the caller texted Cannon to say that he had arrived. The agents simultaneously observed two men in a Jeep drive up to Cannon's apartment building, enter the building, and depart eight minutes later. The Jeep was registered to Kim Alcorn.

The jury heard from two members of the conspiracy. Gloria Hurst testified that she and two friends bought methamphetamine from Cannon. The prosecutor played taped calls between Cannon's number and the unidentified caller concerning drug sales. Hurst identified Cannon and Ruggles as the two parties on the call. She also described a conversation she had between 2017 and 2018 with Ruggles, who asked her if she had methamphetamine. When she said she did not, Ruggles said that he might "go holler at Willie [Cannon] then, see if he has anything." Additionally, Hurst testified that while riding a transport bus after their indictment, Ruggles correctly identified Cannon's drug supplier as codefendant John Barnett. Hurst testified that Ruggles's girlfriend's first name was Kim.

Cannon's once-girlfriend, Tiffanny Pickett, testified broadly about Cannon's methamphetamine distribution. She spoke about his relationship with one of his redistributors, Ruggles. Ruggles would visit Pickett's apartment to purchase methamphetamine from Cannon or would arrange to meet with Cannon elsewhere. Cannon would pack Ruggles's methamphetamine in a Crown Royal bag in order to avoid suspicion. Pickett noted that Cannon complained Ruggles "would never pay on time." She also testified that Ruggles drove his girlfriend's Jeep.

Throughout the trial, the government introduced several taped phone conversations and texts messages between Cannon and the unknown caller whom Hurst and Pickett both identified as Ruggles. These communications concerned Ruggles's debt to Cannon, his customers' complaints of poor drug quality, and arrangements for "re-upping" on drugs. The conversations were rife with code words and slang. An FBI agent testified that these words related to the quantity, quality, and cost of methamphetamine. The jury convicted Ruggles.

***Ruggles's Sentencing***

Ruggles's second claim concerns the methamphetamine purity level for which the district court held him responsible at sentencing. The Guidelines's Drug Quantity Table classifies methamphetamine by three purity levels: "Methamphetamine" refers to any mixture or substance containing a detectable amount of methamphetamine—essentially, a mixture. USSG § 2D1.1(c) (note (A)). "Ice" is a mixture or substance that contains at least 80% pure d-methamphetamine hydrochloride. *Id.* (note (C)). Actual methamphetamine is "the weight of the controlled substance, itself, contained in the mixture or substance." *Id.* (note (B)). Ice and actual methamphetamine were discussed interchangeably during Ruggles's sentencing, as they render equal Guidelines ranges. USSG § 2D1.1(c).

The U.S. Probation Office prepared a Presentence Investigation Report (PSR) before Ruggles's sentencing. It used Ruggles's intercepted calls and texts to string together a "conservative estimate" of the amount and concentration of methamphetamine Ruggles bought from Cannon pursuant to the conspiracy. It determined that Ruggles bought 870 grams of ice and found Ruggles's offense level to be 34, his criminal history category IV, and his Guidelines range 210 to 262 months. *Id.*

Ruggles objected to the PSR, arguing that he should be sentenced based on 870 grams of methamphetamine rather than 870 grams of ice. At sentencing, the parties agreed that Ruggles was responsible for 870 grams of methamphetamine and that the methamphetamine's purity would not impact Ruggles's mandatory maximum or minimum sentence of ten years to life.

Ruggles argued that his Guidelines range should not be calculated based on actual methamphetamine, since the jury only convicted him of conspiracy to possess with the intent to distribute methamphetamine. The government countered that the court could find, by a preponderance of evidence, that Ruggles was responsible for distributing actual methamphetamine. The district court found that "the only proof that was presented as far as sentencing is concerned, that the [district c]ourt has seen, is that it was actual [methamphetamine]." The district court also found that the question of purity need not be presented to the jury.

Although the district court found that Ruggles's Guidelines range was 210 to 262 months, it sentenced him to 180 months of incarceration with five years of supervised release.

**II.**

**A. The Sufficiency of the Evidence**

Ruggles argues that there was insufficient evidence to support his conviction. The indictment charged him with conspiring to distribute fifty grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 846. Under § 846, the government must show "an agreement to violate the drug laws, the defendant's knowledge of the agreement, and the defendant's decision to voluntarily join (or 'participate in') it." *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). The jury may infer the defendant's participation in a conspiracy through his conduct and other circumstantial evidence. *United States v. Martinez*, 430 F.3d 317, 330 (6th Cir. 2005).

We review the sufficiency of the evidence de novo. *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). We consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Woods*, 877 F.2d 477, 479 (6th Cir. 1989) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). Ruggles "bears a very heavy burden" here: circumstantial evidence alone is sufficient to sustain a conviction, and the court does not weigh the evidence, assess witness credibility, or substitute its judgment for that of the jury. *Kelley*, 461 F.3d at 825; *United States v. Salgado*, 250 F.3d 438, 446 (6th Cir. 2001).

Ruggles sets forth two arguments to support his view that the evidence is insufficient. First, he asserts that "[t]he government's entire case rested on the testimony of two females that understood their role was to 'dance to the government's music' in order to avoid lengthy prison sentences." This argument contains some factual inaccuracies: Ruggles was not convicted upon the word of "two females" alone. The government presented six total witnesses against Ruggles, including four investigating agents. It also presented several recorded calls and text messages between Cannon and Ruggles explicitly discussing methamphetamine distribution.

Second, Ruggles contends that the government's case was based on circumstantial evidence rather than "direct knowledge or first-hand observations by witnesses." Again, Ruggles faces some factual issues here. The jury heard from Hurst, who spoke with Ruggles about procuring methamphetamine, and Pickett, who witnessed Ruggles buy methamphetamine from her former boyfriend. The jury heard Ruggles's voice firsthand on multiple recorded calls. And even if Ruggles had been convicted only on circumstantial evidence, that alone could sustain his conviction. *United States v. Spearman*, 186 F.3d 743, 746 (6th Cir. 1999).

The government proved the essential elements of Ruggles's crime beyond a reasonable doubt. It established an agreement: According to Pickett, Cannon would drive to Alabama to pick up methamphetamine from his supplier. And, according to Hurst, Cannon supplied methamphetamine to her and her friends.

The government established Ruggles's knowledge of the conspiracy: Hurst testified that Ruggles, on one occasion, asked her for methamphetamine and determined that he would speak to Cannon when he learned she had none. And finally, the government established that Ruggles participated in the conspiracy: Pickett testified that Ruggles would meet with Cannon, "re-up" on methamphetamine packaged in Crown Royal bags and redistribute the methamphetamine he received from Cannon. Based on this evidence presented at trial, a rational trier of fact could find that Ruggles engaged in a conspiracy to distribute fifty grams or more of methamphetamine.

## B. The Reasonableness of Ruggles's Sentence

Ruggles challenges the district court's determination that he was responsible for the distribution of 870 grams of actual methamphetamine rather than 870 grams of a mixture or substance containing a detectable amount of methamphetamine. *See* USSG § 2D1.1(c) (note (A)).

Sentences are reviewed for both procedural and substantive reasonableness under the abuse-of-discretion standard. *United States v. Fleischer*, 971 F.3d 559, 567 (6th Cir. 2020). Ruggles focuses only on the procedural reasonableness of his sentence, arguing that the district court improperly calculated his Guidelines range. "Procedural reasonableness requires the court to 'properly calculate the guidelines range, treat that range as advisory, consider the sentencing factors in 18 U.S.C. § 3553(a), refrain from considering impermissible factors, select the sentence based on facts that are not clearly erroneous, and adequately explain why it chose the sentence.'" *United States v. Bailey*, 931 F.3d 558, 562 (6th Cir. 2019) (quoting *United States v. Rayyan*, 885

F.3d 436, 440 (6th Cir. 2018)). In determining whether the district court properly calculated the Guidelines range, we review the district court's factual findings for clear error and its legal conclusions de novo. *Fleischer*, 971 F.3d at 567.

Ruggles raises the narrow question of whether it was right for the district court to find him responsible for actual methamphetamine, rather than a mixture. Broadly, he asks whether a district court can make a factual finding which changes a defendant's Guidelines range, but not his statutory maximum or minimum.

### 1. *The district court properly held Ruggles responsible for actual methamphetamine.*

Ruggles's first argument is belied by the record. The government presented competent evidence of the methamphetamine's purity, which the district court reasonably relied on.

For sentencing purposes, "[t]he district court may rely on any competent evidence in the record; however, the district court's findings must have some minimum indicium of reliability beyond mere allegation." *United States v. Treadway*, 328 F.3d 878, 884–85 (6th Cir. 2003) (quoting *United States v. Hough*, 276 F.3d 884, 891 (6th Cir. 2002)).

Ruggles conceded that he was responsible for 870 grams of methamphetamine, so the district court only had to make a finding on the methamphetamine's purity.[2] The government presented lab results showing that the methamphetamine seized from Ruggles's co-conspirators constituted actual methamphetamine or ice. A DEA agent interpreted those lab results and testified that Cannon admitted to regularly supplying Ruggles with ice. The district court concluded that

---

[2] Probation found that Ruggles purchased 870 grams of methamphetamine from Cannon "[b]ased on a conservative estimate taken from the Title III wiretapped phone calls and text messages[.]" This estimate was rendered in line with our precedent. *See United States v. Treadway*, 328 F.3d 878, 885 (6th Cir. 2003) ("Where exact drug quantity cannot be established, a district court may make a reasonable quantity estimate if that estimate is supported by the preponderance of the evidence.").

"[t]he only proof that was presented as far as sentencing is concerned, that the [c]ourt ha[d] seen, is that [the methamphetamine] was actual." The district court therefore did not err in determining, by a preponderance of the evidence, that Ruggles conspired to distribute at least 870 grams of actual methamphetamine.

### 2. *The question of purity need not be presented to the jury.*

Ruggles argues that since the jury convicted him of conspiring to possess with the intent to distribute "methamphetamine," the district court's determination that he was responsible for "actual methamphetamine" violated the Sixth Amendment in light of *Blakley v. Washington*, 542 U.S. 296, 301 (2004), and *United States v. Booker*, 543 U.S. 220, 222 (2005). He claims that the district court was obligated to "accept the jury's collective judgment" rather than making its own finding on purity. Ruggles's argument is meritless.

It is true that facts which increase a defendant's statutory maximum or minimum sentence are elements of a crime that must be proven to the jury. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). But the statutory maximum and minimum sentences are not at issue here, because Ruggles conceded that he faced at least ten years and a maximum of life imprisonment.[3] Our precedent is clear: Facts that change the Guidelines range without changing the minimum or maximum sentence need not be found by a jury, but may instead be found by a judge. *United States v. Johnson*, 732 F.3d 577, 584 (6th Cir. 2013).

---

[3] Ruggles was convicted of violating 21 U.S.C. § 841(a)(1), which criminalizes the manufacture or distribution of controlled substances. Defendants who are held responsible for 50 grams of "methamphetamine" or 500 grams of "a mixture or substance containing a detectable amount of methamphetamine" face a minimum of 10 years and a maximum penalty of life imprisonment. 21 U.S.C. § 841(b)(1)(A)(viii). The jury convicted Ruggles of conspiring to possess with the intent to distribute more than 50 grams of "methamphetamine." During his sentencing, Ruggles conceded that he was responsible for 870 grams of methamphetamine, and that he faced a minimum of ten years and a maximum of life imprisonment, regardless of the methamphetamine's purity level.

Ruggles claims that *Blakely* and *Booker* prohibit a district court from using the Guidelines to impose a sentence on facts not found by the jury. This is incorrect. In *Blakely*, the Supreme Court held that, any fact, other than a prior conviction, that increases a sentence beyond the *statutory* maximum must be submitted to a jury. 542 U.S. at 303. And in *Booker*, the Supreme Court rendered the Guidelines advisory. 543 U.S. at 266. Later, in *White*, we held that "[s]o long as the defendant receives a sentence at or below the statutory ceiling set by the jury's verdict, the district court does not abridge the defendant's right to a jury trial by looking into other facts . . . when selecting a sentence within that statutory range." *United States v. White*, 551 F.3d 381, 385 (6th Cir. 2008) (en banc). And recently, we held that where a jury convicted two defendants of distributing "50 grams or more of methamphetamine," the district court's imposition of a sentence based on actual methamphetamine was constitutional and did not violate *Blakely* or *Booker*. *United States v. Reed*, 72 F.4th 174, 188–90 (6th Cir. 2023). "[A] conviction under [21 U.S.C.] § 841(b)(1)(A) for distributing only 50 grams of meth *cannot* mean 50 grams of a meth mixture" because a conviction for meth mixture would have required a finding of 500 grams instead. *Id.* at 188-89.

The district court determined that Ruggles was responsible for conspiring to possess with the intent to distribute actual methamphetamine and, using the Guidelines, sentenced him to fifteen years in prison followed by five years of supervised release. Because this sentence did not exceed the statutory maximum, the district court's finding that Ruggles was responsible for actual methamphetamine did not result in a violation of Ruggles's constitutional rights.

**AFFIRMED**.