NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0385n.06

Case No. 23-5592

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **FILED**<br>Sep 11, 2024<br>KELLY L. STEPHENS, Clerk |
| Plaintiff-Appellee, | ) | |
| v. | ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE |
| ANTHONY ORLANDO SMITH, | ) | |
| Defendant-Appellant. | ) | OPINION |

Before: SUTTON, Chief Judge; LARSEN and MURPHY, Circuit Judges.

SUTTON, Chief Judge. Anthony Smith challenges his within-Guidelines sentence after his guilty plea to drug conspiracy charges. Seeing no error, we affirm.

In late 2019, state and local Tennessee law enforcement launched an investigation into methamphetamine and crack cocaine trafficking, identifying Smith as one of the area's "key distributors." R.214 at 8. Confidential informants executed several controlled drug purchases from Smith and his associates.

Two of the sales directly involved Smith. One informant bought about 35 grams of 91% pure methamphetamine from him, and another informant attempted to do the same within a month. On the second occasion, however, delays left Smith without the promised drugs on time. Smith's own supplier instead completed the job. Through that supplier, the informant secured about 17 grams of methamphetamine, this time 100% pure.

Smith's customers also piqued the police's interest. After the two orchestrated sales, law enforcement obtained a warrant to search the home of Timothy Stewart, another dealer who bought regularly from Smith. During a lawful search of Stewart's residence, police uncovered 20.6 more grams of methamphetamine.

After Smith sold the drugs to the two informants and after the police searched Stewart's home, the police arrested Smith, though only at the end of a vehicle and on-foot chase. The next month, a police interview with Stewart revealed that Smith had sold him the methamphetamine seized from his home. Stewart elaborated that he bought an ounce of methamphetamine from Smith every two weeks for roughly half a year before the police searched his home.

Smith pleaded guilty to conspiring to distribute 50 or more grams of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.

The probation office's presentence report found that Smith was responsible for a total of 449.09 grams of actual methamphetamine. About 52 grams of that total stemmed from sales to informants. The rest, totaling about 397 grams, referred to his frequent sales to Stewart. As to the purity of the methamphetamine, the report highlighted lab testing that found a minimum of 91% purity for the 52 grams sold to informants. Law enforcement did not test the methamphetamine sold to Stewart. These findings and Smith's criminal history generated a Guidelines range of 151 to 188 months. Smith did not object to the report.

At sentencing, Smith asked for a downward variance to 130 months due to his mental health and substance abuse issues. The district court rejected his request, concluded that Smith's crime fell within the "heartland of the guidelines," R.242 at 8–9, and found that the § 3553 sentencing factors supported the sentence. The court sentenced him to 151 months' imprisonment.

On appeal, Smith first challenges the district court's reliance on the presentence report's drug-purity calculations, which increased the Guidelines range. Because Smith did not raise this point below, the district court decision stands unless Smith shows a plain error that affected his substantial rights and implicates the fundamental fairness of his sentencing proceeding. *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).

At sentencing, the government bears the burden of proving drug quantity and purity by a preponderance of the evidence. *United States v. Treadway*, 328 F.3d 878, 884 (6th Cir. 2003). To make this showing, district courts may rely on any evidence in the record that has "some minimum indicium of reliability." *Id.* at 884–85 (quotation omitted). When a presentence report states drug-quantity calculations and a defendant does not raise any objection to those calculations, district courts "have every reason to believe that those quantities provided a reliable basis for determining [a] sentence." *Id.* at 886. A failure to object in this scenario, then, "operates as an admission as to the drug types and quantities" in the presentence report. *United States v. Stafford*, 258 F.3d 465, 476 (6th Cir. 2001); *Vonner*, 516 F.3d at 385 ("By failing to object to [a] presentence report, [a] defendant] accept[s] all of the factual allegations contained in it."); Fed. R. Crim. P. 32(i)(3)(A). When a court relies on such undisputed facts, it does not plainly err. *Treadway*, 328 F.3d at 886 n.4; *see also United States v. Cabbage*, 91 F.4th 1228, 1232 (6th Cir. 2024). This principle correctly funnels these disputes to the district courts, where parties are in "the best position to litigate" facts. *Stafford*, 258 F.3d at 475 n.6.

In this sentencing, no plain error occurred. The district court ensured that Smith and his lawyer had copies of the report and time to discuss it. The court asked whether Smith had objections to the report. He had none. Only then did the court find that, because there were "no objections to the presentence report," its contents "accurately state[d] the facts and also correctly

calculate[d] the sentencing guidelines." R.242 at 3. In offering no objections, Smith admitted to the report's factual findings. The district court did not plainly err in crediting these facts.

Smith's response does not dissuade us. He accepts that he "did not object to the district court's drug quantity calculations," yet he nonetheless maintains that the government failed to adequately prove the purity of the methamphetamine he sold to Stewart. Appellant Br. 9–10. To support this point, he cites cases in which district courts proceeded carefully in finding drug quantities and purities. But all of the cited cases involve defendants who squarely presented their claims to the district court. *See, e.g.*, *United States v. Reed*, 72 F.4th 174, 183 (6th Cir. 2023) (allowing a sentencing challenge after defendants, while in the district court, "both objected to the purity of the meth that was used to calculate their Guidelines ranges"); *United States v. Mahaffey*, 53 F.3d 128, 131 (6th Cir. 1995) (vacating a district court sentence based on a drug-purity calculation against which defendants argued at the trial court); *United States v. Walton*, 908 F.2d 1289, 1301 (6th Cir. 1990) (noting that challengers "argued below and argue here" that the district court incorrectly calculated how much cocaine they dealt). That is not this case. In contrast to these defendants, Smith gave up his chance to challenge the drug quantities. No reversible error occurred.

Smith separately challenges the substantive reasonableness of his 151-month sentence. In essence, he claims that his sentence is "too long," an argument that receives abuse-of-discretion review. *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). A sentence that comes within a properly calculated Guidelines range presumptively satisfies this inquiry. *Vonner*, 516 F.3d at 389.

Smith's bottom-of-the-range sentence does not overcome this presumption. The district court explained Smith's sentence, describing his "almost constant" criminal history and the court's

desire "to protect the public, . . . promote respect for the law," and "deter others."  R.242 at 9; *see* 28 U.S.C. §§ 3553(a)(1), (a)(2)(A)–(C).  When Smith asked the trial court to consider his mental health issues, the court did just that.  All in all, the court still felt that this sentence aptly balanced the relevant considerations.

Smith counters that the district court should have disregarded the Guidelines policy of sentencing pure methamphetamine more harshly than mixtures of the drug.  *See* U.S.S.G. § 2D1.1. We have repeatedly rejected such arguments that "amount[] to little more than a policy disagreement." *United States v. Mosley*, 53 F.4th 947, 965 (6th Cir. 2022).  It makes no difference that a handful of district courts have rejected this Guideline.  *See United States v. Johnson*, 812 F. App'x 329, 334–35 (6th Cir. 2020) (collecting cases).  Even if some district courts "*may* take this policy disagreement into consideration," that does not mean all courts are compelled to do so. *United States v. Kennedy*, 65 F.4th 314, 326 (6th Cir. 2023); *see United States v. Lynde*, 926 F.3d 275, 281 (6th Cir. 2019).  No abuse of discretion occurred.

We affirm.