(103 P.3d 492)

No. 90,958

STATE OF KANSAS, *Appellee*, v. ANTOINE L. BLAND, *Appellant*.

Opinion filed December 30, 2004.

*Heather Cessna*, assistant appellate defender, for appellant.

*Matt J. Maloney*, assistant district attorney, *Nola Foulston*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before GREENE, P.J., MARQUARDT, J., and BUKATY, S.J.

GREENE, J.: Antoine L. Bland appeals his convictions of identity theft, attempted theft by deception, and three counts of making a false information, claiming multiplicity, insufficiency of evidence, and other procedural and sentencing errors. We affirm the convictions but vacate the sentence and remand the case for resentencing.

*Factual and Procedural Overview*

Within a couple of days after Kena Battle discovered that her purse had been stolen from her parked car, Bland and Dominique Bell visited a motorcycle store in Wichita, where Bell indicated that she wished to purchase a motorcycle for Bland. Bell was provided with a credit application, and she completed it in the name of Kena Battle. When the application was approved, Bell presented Battle's driver's license in order for the store to issue a 30-day permit in Battle's name, which was signed by Bell. To finalize the sale, proof of insurance was required, so Bell and Bland left the store to obtain the requested information. When they returned with incomplete information, they provided a phone number for the store to call their insurance agent and explain what more was needed. Store personnel became suspicious when the purported agent did not answer his phone like a business. Shortly thereafter Bland left and brought back to the store additional but incomplete insurance information, but this was followed by a fax from an insurance agent confirming coverage for Battle. Nevertheless, suspicion had by then overcome the store personnel, and police were called who ultimately effected the arrest of both Bland and Bell.

Bland was charged with identity theft, three counts of making a false information, and attempted theft and was tried separately from Bell. He initially waived his right to a jury trial, but later he attempted to set aside the waiver, which was denied. Before trial, he requested that a transcript of the preliminary hearing be provided, but this was also denied. At a bench trial, Bell testified in support of Bland's principal defense that Bland knew her only as

Battle and was unaware of the scheme to use false information to purchase the motorcycle. The district court was apparently unimpressed with this defense, convicting Bland of all five charges and sentencing him to 61 months' imprisonment. He appeals.

*Did the District Court Abuse Its Discretion in Denying Bland's Motion for a Transcript of the Preliminary Hearing?*

Bland argues the trial court erred in denying his request for a transcript of the preliminary hearing. The State argues Bland failed to show the transcript was necessary to present his defense adequately. In denying Bland's request for the transcript, District Judge Gregory L. Waller stated, "You indicated to me that counsel represented the defendant at those hearings. I believe you, [defense counsel], can talk with those attorneys and determine what, if any, materials there would be. There are other means available." We review this ruling for an abuse of discretion. See *State v. Brown,* 266 Kan. 563, 572, 973 P.2d 773 (1999).

"In determining whether an indigent defendant in a criminal proceeding is entitled to a transcript of a trial or other proceeding prepared at State expense, the court may consider the availability of alternative devices that would fulfill the same functions as a transcript. [Citations omitted.] An indigent criminal defendant on proper showing of need is entitled to have a transcript of portions of previous trial proceedings prepared at State expense, subject however to a determination by the trial court that such transcript is necessary for the indigent to present his defense adequately." *State v. Jordan,* 220 Kan. 110, 113, 551 P.2d 773 (1976).

Bland's central complaint is that he had limited time to prepare for trial and that different attorneys represented him at the preliminary hearing and trial. The State responds that any difficulty resulting from a change in counsel was Bland's own doing since he fired his court-appointed attorney, retained his own attorney, but fired him and accepted new court-appointed counsel before trial. More importantly, beyond unsupported accusations of inconsistent testimonies by State witnesses, Bland has made no substantial showing that he was prejudiced at trial due to the lack of the transcript. We agree with the district court that Bland's attorney was free to consult with prior attorneys; if this proved unsatisfactory, Bland could have conducted pretrial discovery. The record fails to

show how these alternatives were insufficient. Accordingly, we conclude that there was no abuse of discretion by the district court in denying Bland's request for the transcript.

*Did the District Court Abuse Its Discretion in Denying Bland's Motion to Withdraw His Jury Waiver?*

According to Bland, his jury trial waiver was not voluntary under *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975), because he "was not sufficiently informed of what his right to a jury trial actually consisted of prior to his waiver of that right" and was "essentially forced to choose between his right to a jury trial and his desire to preserve his attorney-client privilege." The State contends Bland was adequately advised of his right to a jury trial by the court before the court accepted his waiver. In denying Bland's motion to withdraw his jury trial waiver, the judge found that the waiver was voluntarily made and stated, "Seems to me Mr. Bland has been playing games with the system."

"The question of whether a criminal defendant voluntarily waived his right to a jury trial is a question of fact, and, on appeal, this court reviews the record to determine whether substantial competent evidence supported the district court's finding." *State v. Luna*, 28 Kan. App. 2d 148, Syl. ¶ 5, 12 P.3d 911, *aff'd on other grounds* 271 Kan. 573, 24 P.3d 125 (2001). The appellate standard of review of a court's decision on a defendant's motion to withdraw his or her jury trial waiver is abuse of discretion. See *State v. Blanton*, 203 Kan. 81, Syl. ¶ 1, 453 P.2d 30 (1969). "[I]n order for a criminal defendant to effectively waive his right to a trial by jury, the defendant must be first advised by the court of his right to a trial by jury, and he must personally waive this right in writing or in open court for the record." *Irving*, 216 Kan. at 590.

While obvious from the record that Bland personally waived his right to trial by jury in open court on the record, the parties disagree on whether the court advised Bland of his right to a jury. The entire exchange between Bland and the court during the motion to withdraw waiver of jury trial is as follows:

"THE COURT:     State of Kansas versus Antoine Bland. Mr. Bland, I have been advised by Mr. Singleton it is your desire to give up your right to jury trial, is that correct?

"MR. BLAND:     Yes.

"THE COURT:    Do you understand if you give up your right to jury trial, you will never be able to try this case to a jury, you would either have to try it to a judge, enter a plea of guilty, or make some other disposition of the case, do you understand that?
"MR. BLAND:    Yes.
"THE COURT:    Having that in mind, is it your desire to give up your right to jury trial?
"MR. BLAND:    Yes.
"THE COURT:    I'll accept the waiver."

Bland first claims that his waiver should be set aside because he was not informed that he had a right to a 12-person jury, citing *State v. Simpson*, 29 Kan. App. 2d 862, 32 P.3d 1226 (2001). We distinguish *Simpson* as having no application where the court's explanation of the consequences of waiver are far more complete than a mere inquiry whether a defendant objects to a jury of 11 persons. In contrast, our facts here are more similar to *State v. Clemons*, 273 Kan. 328, 337, 45 P.3d 384 (2002), where an examination of the totality of the circumstances demonstrated that a defendant knowingly and voluntarily waived his right, notwithstanding the trial court's failure to specify his right to a 12-person jury. A similar examination here supports our conclusion that Bland's waiver was made knowingly and voluntarily.

Bland also claims that he should be allowed to withdraw his waiver because his attorney at that time gave him bad advice, but he could not disclose the erroneous advice for fear of waiving his attorney-client privilege. As the State notes, however, the privilege does not extend "to a communication relevant to an issue of breach of duty by a lawyer to his or her client, or by the client to his or her lawyer." K.S.A. 60-426(b)(3). It was Bland's choice whether to disclose the alleged bad advice he received from Stan Singleton, and he chose not to.

We conclude that substantial competent evidence supports the finding that Bland voluntarily waived his right to jury trial and the district court did not abuse its discretion in refusing to allow a withdrawal of that waiver.

*Was the Evidence Sufficient to Support Bland's Convictions?*

Bland contends the evidence presented at trial does not support his convictions for identity theft, attempted theft, and three counts

of making a false information because he was "just tagging along" with someone he thought was Battle as she bought him a present for his birthday. The State believes that a rational factfinder could have found Bland guilty beyond a reasonable doubt because the evidence demonstrated that Bland knowingly aided and abetted Bell in her attempt to purchase a motorcycle through the use of false information.

" 'When a defendant challenges the sufficiency of the evidence, [an appellate] court's standard of review is whether, after review of all of the evidence, viewed in the light most favorable to the State, the appellate court is convinced that a rational jury could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Mays,* 277 Kan. 359, 377, 85 P.3d 1208 (2004).

### Identity Theft

K.S.A. 2003 Supp. 21-4018(a) defines identify theft as "knowingly and with intent to defraud for economic benefit, obtaining, possessing, transferring, using or attempting to obtain, possess, transfer or use, one or more identification documents or personal identification number[s] of another person other than that issued lawfully for the use of the possessor."

The State argues that although the evidence does not show that Bland personally obtained, possessed, transferred, or used or attempted to obtain, possess, transfer, or use Battle's driver's license, Bland aided and abetted Bell in her possession and attempted use of Battle's license with the intent to defraud the dealership for economic benefit. Although Bland was charged with, prosecuted for, and convicted of identity theft, not *aiding and abetting* identity theft, "[a] person who aids and abets in the commission of the crime may be charged either as a principal or as an aider and abettor." See *State v. Green,* 254 Kan. 669, 687, 867 P.2d 366 (1994). "To show guilt of one who aids and abets, the law requires that the person knowingly associates with the unlawful venture and participates in a way which indicates that such person is furthering the success of the venture." *State v. Hobson,* 234 Kan. 133, 138, 671 P.2d 1365 (1983).

"It is well established in Kansas law that the mere presence of an accused at the time and place of the crime alleged is not sufficient to make the accused guilty of the crime, but if from the facts and circumstances surrounding the defendant's

presence at the time and from the defendant's conduct it appears that the defendant's presence did in fact encourage someone else to commit the criminal act, guilt may be inferred. *State v. Smolin*, 221 Kan. 149, 153, 557 P.2d 1241 (1976). In the absence of anything in a person's conduct showing a design to encourage, incite, aid, abet, or assist in the crime, the trier of facts may consider failure of such person to oppose the commission of the crime in connection with other circumstances and conclude therefrom that the person assented to the commission of the crime, lent his or her countenance and approval thereto, and thereby aided and abetted the commission of the crime. 221 Kan. at 153." *State v. Wakefield*, 267 Kan. 116, 121, 977 P.2d 941 (1999).

The State offers the following evidence in support of Bland's identify theft conviction by aiding and abetting the crime: Battle's purse was stolen on August 18, 2002; on August 20, 2002, Bland and Bell arrived at the dealership together; they began looking at motorcycles together; Bland sat on the used motorcycles and revved their engines; Bland and Bell made a joint decision to purchase a new motorcycle; Bland was in the store when Bell presented Battle's driver's license for purposes of purchasing a motorcycle; and Bell indicated the motorcycle was for Bland's use.

Bland argues he did not have the required knowledge or intent necessary to aid and abet identity theft because he believed Bell was actually Battle. Bland relies on Bell's testimony and points to the lack of evidence showing otherwise. Bell did indeed testify that Bland had never known Bell by any name other than Battle, that Bland was not aware that she was using a false name in purchasing the motorcycle, and that Bland did not encourage her to fill out the documents using Battle's identity.

Bell's testimony regarding her relationship with Bland, however, is inconsistent and highly incredible. At first, she claimed to not know Bland at all, then she admitted to being with Bland in the motorcycle dealership on August 20, 2002. She denied that she had known Bland for "quite a while" before August 20, then testified that she had known Bland for "about two or three weeks." She testified that Bland had never known her by any name but Kena Battle but also that she had possessed Battle's identification for longer than 2 days before her arrest on August 20. Again, Battle's purse and identification were stolen from her car on August

18, 2002. Near the conclusion of trial, the judge made the following comment:

"Well, I seriously doubt that the State's going to file a perjury count against Dominique Bell, but they should certainly consider it. I understand and appreciate how difficult it is to prove perjury. But she did it this morning when she testified. She did everything she could to help Mr. Bland. Wasn't good at it, but she did what she could."

The evidence clearly shows that Bell knowingly possessed and used or attempted to use Battle's identification with the intent to defraud the dealership for her economic benefit. When the evidence is viewed in the light most favorable to the State, a rational jury could have found that Bland aided and abetted Bell in her crime and is guilty of identity theft beyond a reasonable doubt.

*Making a False Information:*

As above, Bland argues the State failed to provide sufficient evidence for a rational factfinder to find him guilty beyond a reasonable doubt of the three counts of making a false information because he believed Bell was actually Battle. Again, the State maintains that the evidence shows Bland aided and abetted Bell in her commission of these crimes.

"Making false information is making, generating, distributing or drawing, or causing to be made, generated, distributed or drawn, any written instrument, electronic data or entry in a book of account with knowledge that such information falsely states or represents some material matter or is not what it purports to be, and with intent to defraud, obstruct the detection of a theft or felony offense or induce official action." K.S.A. 2003 Supp. 21-3711.

The evidence shows Bell made a false information three times by using Battle's name to make three separate written instruments, with both the knowledge that each information falsely stated or represented her true identify and the intent to defraud the dealership. To show that Bland aided and abetted Bell in fraudulently filling out two of the documents (the credit application and the 30-day permit), the State cites the same evidence referenced above as showing that Bland knowingly associated with Bell in the unlawful venture and participated in a way which indicated he was furthering the success of the venture. It maintains the facts show Bland

and Bell "throughout the incident acted in concert in an attempt to purchase a motorcycle using Kena Battle's identity."

As for the third written instrument (the insurance information), there was substantial evidence to show Bland's involvement in the making of the false information. Bland initially submitted the insufficient insurance information to the store. Bland and Bell left the dealership together to obtain satisfactory proof of insurance, and upon returning, Bland again presented the deficient insurance information. Bland and Bell again left the dealership to either get the insurance information corrected or get different insurance. During their absence, the dealership received a fax from Farmer's Insurance which listed Battle as the primary insured for the motorcycle. The dealership then received a phone call from a man believed to be Bland, who asked if the insurance information was correct and "if they could go ahead and get the motorcycle that day."

When all of the evidence is viewed in the light most favorable to the State, a rational jury could have found that Bland aided and abetted Bell in her crimes and is guilty of all three counts of making false information beyond a reasonable doubt.

### Attempted Theft

Bland argues the State did not prove he committed an overt act toward obtaining by deception a motorcycle from the dealership because he believed Bell was actually Battle and he therefore did not have an intent to obtain the motorcycle by deception. The State once more contends the evidence showed both Bland and Bell went to the dealership and engaged in numerous acts in an attempt to obtain the motorcycle.

Theft by deception is defined in K.S.A. 2003 Supp. 21-3701(a)(2) as obtaining by deception control over property with intent to deprive the owner permanently of the possession, use, or benefit of the owner's property. Attempt is "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 21-3301(a).

The evidence shows Bland accompanied and assisted Bell in her attempt to obtain control over a motorcycle by deceiving the owner, with the intent to permanently deprive the dealership of its possession and use of the motorcycle. The overt act needed for attempt could be any of the actions taken by Bell or Bland in order to obtain the motorcycle. When the evidence is viewed in the light most favorable to the State, a rational jury could have found that Bland aided and abetted Bell in her crime and is guilty of attempted theft beyond a reasonable doubt.

*Were the Charged Offenses Multiplicitous?*

Whether convictions are multiplicitous is a question of law subject to unlimited review. *State v. Schuette,* 273 Kan. 593, 600, 44 P.3d 459 (2002). "Multiplicity is the charging of a single offense in several counts of a complaint or information. The primary concern with multiplicity is that it creates the potential for multiple punishments for a single offense." *State v. Garcia,* 272 Kan. 140, 143, 32 P.3d 188 (2001). "The test for whether the offenses merge and are, therefore, multiplicitous is whether each offense charged requires proof of a fact not required in proving the other; if so, then the offenses do not merge and are not multiplicitous." 272 Kan. at 143-44.

Bland argues that the State cannot take one act, the use of Battle's driver's license, and separate it into five different charges. He believes that (1) identity theft merges with the three charges of making a false information because the use of the stolen identification was necessary to prove the written instruments were false, (2) the three charges of making a false information merge with attempted theft because the State used them to prove the overt act requirement of attempted theft, and (3) identity theft merges with attempted theft because the economic benefit required for identity theft was necessary to prove the intent requirement for attempted theft.

First, we conclude that there is no multiplicity among the false information counts and the identity theft. The three counts of making a false information were based upon Bland's involvement in procuring the 30-day permit, submitting the credit application, and

producing the insurance binder. Proof that these instruments were made and were false was not required in proving identity theft because identity theft was complete upon mere possession of Battle's identification instruments with intent to defraud and prior to actual use for any purpose.

Next, we conclude that there is no multiplicity among the false information counts and the attempted theft by deception. Again, proof that the instruments were made and were false was not required in proving attempted theft because these were not the exclusive overt acts toward obtaining control over the motorcycle. As noted by the State, numerous other overt acts were sufficient to prove the attempted theft, including the dishonest actions in examining, selecting, and purporting to have the wherewithal to purchase the motorcycle, the submission of a false telephone number for an insurance agent, the presentation of erroneous insurance information to the store prior to the store's receipt of a fraudulent binder, and other direct participation by Bland.

Finally, we conclude that there is no multiplicity between the identity theft and the attempted theft by deception. Proof of attempt to gain control of the motorcycle was not required in proving identity theft because, as we note above, identity theft was complete upon mere possession of Battle's identification instruments with intent to defraud and prior to actual use for any purpose.

### Did the District Court Err in Sentencing Bland?

Interpretation of the Kansas Sentencing Guidelines Act, K.S.A. 21-4701 *et seq.*, is a question of law, and an appellate court's scope of review is unlimited. *State v. Perez-Moran*, 276 Kan. 830, 833, 80 P.3d 361 (2003); *State v. Prater*, 31 Kan. App. 2d 388, 392, 65 P.3d 1048, *rev. denied* 276 Kan. 973 (2003).

The district court sentenced Bland to a controlling term of 61 months' imprisonment, based upon doubling the base sentence of 29 months for the primary crime of identity theft but imposing additional consecutive sentences for the remaining counts. The State concedes that this was error and that the maximum sentence was 58 months. Applying K.S.A. 2003 Supp. 21-4720(b)(4), Bland's sentence cannot exceed twice the base sentence or 58 months.

Accordingly, we agree that the district court erred, and we vacate the sentence and remand for resentencing.

### Did Cumulative Error Deprive Bland of a Fair Trial?

" 'Cumulative trial errors, when considered collectively, may be so great as to require reversal of the defendant's conviction. The test is whether the totality of the circumstances substantially prejudiced the defendant and denied the defendant a fair trial. No prejudicial error may be found upon this cumulative effect rule, however, if the evidence is overwhelming against the defendant.' [Citation omitted.]" *State v. Plaskett*, 271 Kan. 995, 1022, 27 P.3d 890 (2001).

Bland has shown no trial error, for his claims of trial error have failed. In any event, his convictions should stand because the evidence against him is overwhelming.

Bland's convictions are affirmed, but we vacate the sentence and remand the case for resentencing not inconsistent with this opinion.