(154 P.3d 1170)
No. 94,752

CITY OF WICHITA, *Appellee,* v. JEFF W. BANNON, *Appellant.*

—

Opinion filed April 6, 2007.

*Christopher L. Hughes*, of Roger L. Falk & Associates, P.A., of Wichita, for appellant.

*Sharon L. Dickgrafe*, assistant city attorney, and *Gary E. Rebenstorf*, city attorney, for appellee.

Before McANANY, P.J., ELLIOTT and BUSER, JJ.

BUSER, J.: Jeff W. Bannon appeals his conviction for misdemeanor criminal trespass in violation of the Wichita City Code. We reverse and remand for a new trial.

### Factual and Procedural Background

After pleading no contest and being found guilty in Wichita Municipal Court of criminal trespass and resisting a police officer, Bannon appealed to the Sedgwick County District Court. Bannon's retained counsel, Ronald J. Sickmann, filed a request for jury trial in the district court. On the date set for jury trial, however, Sickmann caused the case to be continued for a bench trial. Following local court rules, this was accomplished without Bannon's presence by defense counsel either speaking to the judge's clerk or announcing the change at the jury trial docket call.

Bannon appeared at the bench trial, where he was convicted of criminal trespass, but acquitted of resisting arrest. The evidence at trial showed Bannon attempted to enter an area of Mid-America Auto Auction (Mid-America) restricted to licensed automobile dealers. A uniformed Wichita police officer, Keith Rosenberg, told Bannon not to enter the area. Bannon made several attempts and eventually entered the restricted area, where he was arrested by the officer.

On appeal to our court, Bannon asserted for the first time that he had not waived his right to a jury trial. Bannon framed the issue as ineffective assistance of counsel, however, and our court remanded the case for an evidentiary hearing pursuant to *State v. Van Cleave*, 239 Kan. 117, 119-20, 716 P.2d 580 (1986).

On remand, Sickmann testified to his understanding that Bannon was "leaving [the jury trial] decision to me." Sickmann said Bannon never gave "any specific indication" whether he wished to waive the jury setting. In his own testimony Bannon denied leaving

the issue to his counsel, stating he was "very upset" when he learned of the bench trial setting.

Sickmann did not recall Bannon being upset, but he nevertheless claimed to have asked Bannon if he wished to place the case back on the jury trial docket. According to Sickmann, Bannon "never said that that's what he wanted to do," and that Bannon "seemed satisfied with the fact that we were going to a trial in front of a judge." Bannon testified to the contrary that he told his counsel numerous times he was uncomfortable with a bench trial and would prefer a jury trial. The hearing also established that the judge conducting the bench trial never inquired regarding Bannon's waiver of his jury trial rights, and that Bannon personally took no action to advise the court of his desire for a jury trial. No written waiver of jury trial was ever filed.

At the conclusion of the evidentiary hearing, the district court found "Sickmann did not have specific authority from Mr. Bannon to waive the jury trial," and that "Bannon did not waive his jury trial." The district court held, nevertheless, that defense counsel was not ineffective because he "was following the guidelines and the procedures that are established . . . in the district court." The district court concluded "Sickmann was not ineffective, it's merely that Mr. Bannon did not waive his right to jury trial." Bannon appeals.

### Ineffective Assistance of Counsel Based Upon Counsel's Purported Waiver of Jury Trial

To show ineffective assistance of counsel, Bannon "must establish that counsel's performance was deficient. This requires a defendant to show that counsel made errors so serious, that counsel's performance was less than that guaranteed to a defendant by the Sixth Amendment to the United States Constitution." *State v. Mathis*, 281 Kan. 99, 109, 130 P.3d 14 (2006). Bannon must also "establish that the deficient performance prejudiced the defense." 281 Kan. at 109. These performance and prejudice prongs "are each mixed questions of law and fact, and appeal requires de novo review. [Citation omitted.]" 281 Kan. at 110.

We begin our analysis by acknowledging that Bannon had a constitutional right to a jury trial under the Sixth and Fourteenth Amendments to the United States Constitution because the offense of resisting a police officer pursuant to Wichita City Code § 5.72.010 was punishable by not more than 1 year's imprisonment. See *State v. Irving*, 216 Kan. 588, 589, 533 P.2d 1225 (1975) (citing *Duncan v. Louisiana*, 391 U.S. 145, 20 L. Ed. 2d 491, 88 S. Ct. 1444 [1968]), for the constitutional requirement "that defendants accused of serious crimes be afforded the right to trial by jury . . . where imprisonment for more than six months is authorized."). The jury trial right is also protected by § 5 of the Kansas Constitution Bill of Rights which provides "[t]he right of trial by jury shall be inviolate." Finally, Bannon also had a statutory right to a jury trial as provided by K.S.A. 22-3609(4) because his counsel filed a timely jury trial request after his appeal of the municipal court convictions to the district court.

## The Performance Prong

Given that Bannon had both constitutional and statutory rights to a jury trial, the initial question presented is whether Bannon's counsel provided deficient performance in effecting a purported waiver of these rights without Bannon's authorization.

At the remand hearing, Sickmann admitted to assuming the burden of the waiver decision, but this is a decision "[c]riminal defendants are charged with making." *State v. Rivera*, 277 Kan. 109, 116-17, 83 P.3d 169 (2004); see *Jones v. Barnes*, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 103 S. Ct. 3308 (1983) ("[T]he accused has the ultimate authority to make certain fundamental decisions . . . [such] as to . . . waive a jury. [Citation omitted.]"). Waiver of jury trial is "of such moment that [it] cannot be made for the defendant by a surrogate." *Florida v. Nixon*, 543 U.S. 175, 187, 160 L. Ed. 2d 565, 125 S. Ct. 551 (2004). Stated another way, waiver of jury trial is not among the decisions of strategy or tactics entrusted to defense counsel after consultation with the defendant. See *Rivera*, 277 Kan. at 117; *State v. Nixon*, 223 Kan. 788, 796, 576 P.2d 691 (1978).

The district court also found Bannon had not authorized the waiver Sickmann purportedly effected. While the testimony conflicted on this point, the district court's finding was supported by substantial evidence. See *Graham v. State*, 263 Kan. 742, 756, 952 P.2d 1266 (1998) (applying substantial evidence standard to findings on an ineffective assistance of counsel determination); *State v. Bland*, 33 Kan. App. 2d 412, 415, 103 P.3d 492 (2004), *rev. denied* 279 Kan. 1008 (2005) (applying substantial evidence standard to findings on waiver of jury trial right).

Waiver of jury trial is a decision to be made by the defendant because it is the defendant's right. See *Flynn v. State*, 281 Kan. 1154, Syl. ¶ 4, 136 P.3d 909 (2006). "There is no more fundamental right in the United States than the right to a jury trial." *State v. Larraco*, 32 Kan. App. 2d 996, 999, 93 P.3d 725 (2004). It is axiomatic that a defense counsel's purported waiver of jury trial without specific authorization from the defendant is less performance than is guaranteed by the United States Constitution. See *Nixon*, 543 U.S. at 187 ("[A]n attorney must both consult with the defendant and obtain consent to the recommended course of action" before exercising or waiving basic trial rights.).

Considering the district court's explicit findings on remand that Bannon did not waive his rights to a jury trial and his counsel did not have specific authority from Bannon to waive these rights, we hold that Bannon's counsel engaged in deficient performance when he effected a purported waiver of jury trial.

In this regard, we disagree with the district court's conclusion of law that defense counsel's performance was not ineffective because he followed local rules regarding the procedure to be followed in waiving a defendant's right to jury trial and scheduling the matter for a bench trial. Similarly, we find unpersuasive the State's claim that waiver is effected differently in municipal court appeals than in district court cases which require a formal "bright line" waiver. See *Larraco*, 32 Kan. App. 2d at 1002 (citing *State v. Jones*, 19 Kan. App. 2d 982, 984, 879 P.2d 1141 [1994]) (Defendant's right to jury trial can only be waived when defendant is advised by court of his or her right to trial by jury and defendant personally waives right in writing or in open court.).

Whether or not Sickmann's actions effecting Bannon's purported waiver comported with local court rules or "bright line" waiver requirements is not dispositive. The more fundamental issue was defense counsel's failure to obtain authorization from Bannon to waive the jury trial. Whatever procedure was used to effect the purported waiver, a knowing and voluntary decision by Bannon was *sine qua non*.

### The Prejudice Prong

Turning to the prejudice prong of the ineffective assistance of counsel test, " 'the defendant must show a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *Mathis*, 281 Kan. at 110 (quoting *State v. Betts*, 272 Kan. 369, 388, 33 P.3d 575 [2001]). This test is typically focused on counsel's performance during trial. In the present case, however, counsel's deficient performance affected the *type* of trial, not the proceedings during trial. Given this particular claim of ineffectiveness, the typical prejudice analysis seems unsuitable because it would require us to speculate about whether the trial result would have been different had a jury rendered a verdict rather than the district court judge.

We must, therefore, consider whether counsel's deficient performance caused a structural defect in the trial itself requiring automatic reversal. See *Arizona v. Fulminante*, 499 U.S. 279, 307-10, 113 L. Ed. 2d 302, 111 S. Ct. 1246 (1991). "The determination of whether an error is structural or harmless involves a question of law over which an appellate court exercises unlimited review. [Citation omitted.]" *State v. Carver*, 32 Kan. App. 2d 1070, 1083, 95 P.3d 104 (2004).

Trial error occurs "during the presentation of the case to the jury, and . . . may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless." *Fulminante*, 499 U.S. at 307-08. Structural errors "defy analysis by 'harmless-error' standards" because they affect "the framework within which the trial proceeds, rather than simply . . . the trial process itself." 499 U.S. at 309-10.

In *Sullivan v. Louisiana*, 508 U.S. 275, 124 L. Ed. 2d 182, 113 S. Ct. 2078 (1993), for example, the United States Supreme Court considered a conviction obtained with a defective reasonable doubt jury instruction. Relying upon *Fulminante*, the Supreme Court observed that deprivation of the right to a "jury verdict of guilt beyond a reasonable doubt" has "consequences that are necessarily unquantifiable and indeterminate." 508 U.S. at 281-82. Such a deprivation therefore "unquestionably qualifies as 'structural error.'" 508 U.S. at 282.

We are persuaded that defense counsel's deficient performance resulted in structural error for which prejudice is presumed. It is well settled (separate from the ineffective assistance of counsel context) that deprivation of the right to a jury trial is automatically reversible error. *See State v. Roland*, 15 Kan. App. 2d 296, Syl. ¶ 5, 807 P.2d 705 (1991) ("[T]he right of a criminal defendant to a jury trial is so fundamental that a violation of the right cannot be harmless error."). Moreover, a trial by jury is part of the framework in which a trial proceeds. The consequences of being deprived of a jury trial are necessarily unquantifiable and indeterminate, and, therefore, unsuitable for the typical harmless error analysis employed in cases involving a counsel's ineffective performance during trial proceedings.

It is true that structural errors "subject to automatic reversal exist in a very limited class of cases." *State v. Swanigan*, 279 Kan. 18, 45, 106 P.3d 39 (2005) (citing *Neder v. United States*, 527 U.S. 1, 8, 144 L. Ed. 2d 35, 119 S. Ct. 1827 [1999]). Decisions of other jurisdictions, however, support our conclusion that structural error is shown where a criminal defendant is deprived of the right to a jury trial by the deficient performance of counsel.

In *McGurk v. Stenberg*, 163 F.3d 470 (8th Cir. 1998), a defendant was not advised of his right to a jury trial and did not waive that right. Citing both *Fulminante* and *Sullivan*, the Eighth Circuit Court of Appeals held "counsel's failure to inform [defendant] of his right to a jury trial[] justifies a presumption of prejudice." 163 F.3d at 474.

In *State v. Stallings*, 658 N.W.2d 106 (Iowa 2003), defense counsel failed to obtain his client's waiver of a jury trial in writing and

did not comply with court rules concerning jury trial waivers. Citing *McGurk*, the Iowa Supreme Court held defense counsel's failure to obtain a written waiver was a " 'structural' defect in which prejudice is presumed." 658 N.W.2d at 112.

In *Abrams v. State*, 777 So. 2d 1205, 1205-06 (Fla. Dist. App. 2001), a defendant was allegedly advised "the only way he could testify on his own behalf was if he opted for a bench trial." A lower Florida court reviewing the defendant's post-conviction motion denied relief for lack of prejudice, but the Florida Court of Appeals reversed. Citing *McGurk*, the appellate court held "the fundamental right to a jury trial allegedly was violated. Certain structural defects in the trial itself . . . require automatic reversal: one of those is the denial of a jury trial." 777 So. 2d at 1206.

We also take guidance from cases considering the related issue of the deprivation of a public trial. The right to a public trial is another of the due process rights "[u]nderpinning" the "foundation of our liberty." *Carver*, 32 Kan. App. 2d at 1071. As a result, denial of a public trial is structural error. *Neder*, 527 U.S. at 8 (citing *Waller v. Georgia*, 467 U.S. 39, 81 L. Ed. 2d 31, 104 S. Ct. 2210 [1984]). In this regard, our Supreme Court found structural error when a trial court improperly closed the courtroom to the public for announcement of a jury verdict. *State v. Dixon*, 279 Kan. 563, 599, 112 P.3d 883 (2005).

"[T]here is no question that the error would not have changed the verdicts because the verdicts had already been reached. The lack of effect on the verdicts, however, should not necessitate the conclusion that the error was harmless where the trial court's closing the courtroom was inconsistent with substantial justice." 279 Kan. at 601.

Finally, we note the State also argues that any error in counsel's purported waiver of Bannon's jury trial rights was invited error because Bannon remained silent when he learned that his counsel had waived a jury trial. In support, the State cites *State v. Clemons*, 273 Kan. 328, 45 P.3d 384 (2002). In *Clemons*, however, not only did our Supreme Court not find invited error, it specifically found that the defendant had personally waived his right to jury trial on the record before the district court judge. 273 Kan. at 341. As a result, we find no merit to this argument.

In the present case we hold it was inconsistent with substantial justice for the trial court to convict the defendant when, due to the deficient performance of his defense counsel, the defendant had not waived his constitutional and statutory rights to a jury trial. Given this structural error, prejudice is presumed and the matter is reversed and remanded for a new trial.

### *Sufficiency of Evidence*

Bannon next contends there was insufficient evidence at trial to support his conviction for trespass.

" 'When the sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt.' [Citation omitted.]" *State v. Kesselring*, 279 Kan. 671, 679, 112 P.3d 175 (2005).

Wichita City Code § 5.66.050 defines criminal trespass as follows:

"Criminal trespass is entering or remaining upon or in any land, structure, vehicle, aircraft or watercraft by a person who knows he/she is not authorized or privileged to do so, and:

"person enters or remains therein in defiance of an order not to enter or to leave such premises on property personally communicated to such person by the owner thereof or other authorized person."

Evidence at trial indicated that the owners of Mid-America hired Officer Rosenberg to serve as a security guard and authorized him to eject persons wrongfully on the premises. On the morning of February 11, 2004, Officer Rosenberg was in uniform with actual and apparent authority to enforce Mid-America's policies regarding trespassing. Officer Rosenberg testified that he informed Bannon he was not allowed to be present in the auction area without a dealer's pass, and that if he attempted to enter, he would be arrested. Bannon entered the auction area in defiance of Rosenberg's repeated admonitions personally communicated to him that he was not permitted to enter the area.

Viewed in the light most favorable to the prosecution, we hold that a rational factfinder could find the City proved beyond a rea-

sonable doubt that Bannon committed the offense of criminal trespass as provided in Wichita City Code § 5.66.050.

Reversed and remanded for a new trial.